**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
FRANK GARGIULO & SON, INC., a New      :
Jersey Corporation,                    :
                                       :
       Plaintiff,                      :    Civil Action No. 08-5102 (JAG)
                                       :
       v.                              :    **OPINION**
                                       :
RIVERDELL MARKET CORP., a New          :
Jersey Corporation and RICHARD         :
DORIAN,                                :
                                       :
       Defendants.                     :
_____:

**GREENAWAY, JR., U.S.D.J.**

      This matter comes before this Court on the motion, filed by plaintiff, Frank Gargiulo & Son, Inc. ("Gargiulo" or "Plaintiff"), seeking entry of default judgment against defendants Riverdell Market Corp. ("Riverdell") and Richard Dorian ("Dorian") (collectively "Defendants"), pursuant to FED. R. CIV. P. 55(b). Gargiulo seeks all damages resulting from Defendants' alleged failures to complete payment for wholesale produce, in violation of statutory, regulatory, and contractual duties. Gargiulo also seeks attorneys' fees, costs of suit, and any other relief deemed just and owing. For the reasons set forth below, the motion shall be granted.

### I. FACTS

      Gargiulo is a licenced dealer of wholesale quantities of perishable agricultural commodities ("Produce") under the Perishable Agricultural Commodities Act ("PACA"), 7

U.S.C. § 499a. (Compl. ¶ 3.) Riverdell is a New Jersey corporation that buys wholesale quantities of Produce in interstate commerce. (Id at ¶ 4.) Dorian is the principal of Riverdell and holds a position of control over the PACA trust assets.[1] (Id. at ¶ 5.) Defendants are each licensed PACA dealers[2] and Dorian is a commission merchant.[3] (Id. at ¶¶ 4, 5.)

In June 2008,[4] Gargiulo sold and delivered, through interstate commerce, wholesale amounts of Produce to Defendants. (Id. at ¶ 7.) Defendants accepted the Produce and agreed to pay Gargiulo $9,192.00. (Cert. of Regina McGowan, an employee of Gargiulo, in Support of Mot. for Default J. [hereinafter "McGowan Cert."] attached to Br. in Supp. of Pl.'s Mot. for Default J.) The invoices, each entitled "Invoice," contain provisions for interest charges of "18% per annum" on unpaid balances and "reasonable attorney's fees of 33 1/3 %" of the unpaid balances. (Compl. Ex. 1; McGowan Cert. Ex. A) The invoices do not contain a provision concerning legal costs. (Id.)

Defendants tendered two checks to Gargiulo totaling $2,662.50; however, both were

---

[1] PACA requires dealers who purchase Produce to establish a trust account, with the receivables or proceeds from the sale of this Produce, for the benefit of all unpaid suppliers or sellers. 7 U.S.C. § 499e(2).

[2] A "dealer" is "any person engaged in the business of buying or selling in wholesale or jobber quantities" any Produce. 7 U.S.C. § 499a(5).

[3] A "commission merchant" is "any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(5).

[4] The Complaint contains a typographical error which states that the transactions occurred in August 2008. (Compl. ¶ 11.) However, the Complaint's attached invoices and the McGowan Certification state that these transactions occurred between June 18 and June 27 of 2008. (Compl. Ex. A; McGowan Cert. ¶ 11.) Typographical errors in the Complaint are not material to the entry of default judgment or the award of damages.

returned by the bank for insufficient funds. (McGowan Cert. ¶ 11.) The McGowan Certification establishes that Defendants paid $1,022.00 toward the principal balance in June and July of 2008. (McGowan Cert. ¶ 11.) This payment reduced the principal balance owed to $8,169.50. (McGowan Cert. ¶ 10.) At some point, Dorian dissipated the PACA trust funds belonging to Gargiulo. (Compl. ¶ 21.) Defendants have since refused to pay Gargiulo the remaining principal balance owed for the Produce. (Id. at ¶ 10.)

Gargiulo filed a complaint against Defendants on October 16, 2008, seeking damages, attorneys' fees, and costs.

## II. LEGAL STANDARD

A district court can enter a default judgment, pursuant to FED. R. CIV. P. 55(b)(2), which states:

> In all other cases, the party must apply for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>     (A) conduct an accounting;
>     (B) determine the amount of damages;
>     (C) establish the truth of any allegation by evidence; or
>     (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2). Further, discretion to enter default judgment is left primarily to the trial court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v.

Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)).  Default does not establish liability for the amount of damages claimed by the plaintiff.  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.").  "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages.  Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993).  In determining the amount, the district court may conduct a hearing.  FED. R. CIV. P. 55(b)(2).  The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  Pope v. United States, 323 U.S. 1, 65 (1944).

### III. JURISDICTION

Before entering default judgment against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."  Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

This Court finds that subject matter jurisdiction is proper, pursuant to 28 U.S.C. § 1331.  This action involves a federal question, the application of PACA.  7 U.S.C. § 499e.  Further,

"district courts clearly have jurisdiction over actions by private parties seeking to enforce payment from the [PACA] trust." Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 138 (3d Cir. 2000).

This Court also finds that it has personal jurisdiction over Defendants since Riverdell is a New Jersey corporation and Dorian is a resident of New Jersey. (See Compl. ¶¶ 4, 5.)

## IV. ANALYSIS

Defendants failed to appear or otherwise plead in response to the Complaint that was filed on October 16, 2008. Plaintiff served its Complaint on Riverdell on October 24, 2008 (Docket Entry No. 4), and on Dorian on November 29, 2008 (Docket Entry No. 5). Gargiulo filed applications for entry of default and the Clerk entered default as to Riverdell on December 11, 2008 and as to Dorian on January 5, 2009. Gargiulo then moved for default judgment against Defendants. This Court finds that default judgment is appropriate, pursuant to FED. R. CIV. P. 55(b)(2).

## V. DAMAGES

Plaintiff seeks $8,169.50 in damages for the Produce delivered to Defendants.[5] PACA requires perishable agricultural commodities dealers, merchants, and brokers to be licenced by the commission. Country Best v. Christopher Ranch, L.L.C., 361 F.3d 629, 631 (11th Cir. 2004)

---

[5] The district court has considerable latitude in determining the amount of damages, and may conduct a hearing to establish the amount of damages, if necessary. Hritz, 732 F.2d at 1180. A hearing is not necessary "as long as [the court] ensures that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111. Having reviewed the McGowan Certification, as well as the invoices, this Court finds no reason to hold an evidentiary hearing. This Court notes that the McGowan Certification asserts that Defendants owe a smaller principal balance than they cited in the Complaint. However, not only does this difference inure to the benefit of Defendants, but the McGowan Certification contains more detailed and current information than the Complaint. As such, this Court will rely on the Certification.

(quoting Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1066-67 (2d Cir. 1995)).  "A buyer's failure to tender prompt payment [for delivered Produce] triggers civil liability . . . ."  Pacific International Marketing, Inc. v. A&B Produce, Inc., 462 F.3d 279, 282 (3d Cir. 2006).

PACA requires a "commission merchant, dealer, or broker" to hold "any receivables or proceeds from the sale" of perishable agricultural commodities, sold in interstate commerce, in a trust account for "the benefit of all unpaid suppliers or sellers . . . until full payment of the sums owing in connection with such transaction has been received by such unpaid suppliers or sellers." 7 U.S.C. § 499e(c)(2).  To preserve the right in the trust, an unpaid supplier must provide written notice of "intent to preserve the benefits of the trust" to the PACA dealer.  7 U.S.C. § 499e(c)(3). Notice must be presented "within thirty calendar days . . . after expiration of the time prescribed by which payment must be made."  Id.  A dealer may make this notice through "ordinary and usual billing or invoice statements."  Id.

Gargiulo, a licensed dealer, alleged in the Complaint its delivery, through interstate commerce (Compl. ¶ 7), of the Produce throughout June 2008 (McGowan Cert. ¶ 11; Compl. Ex. 1.)  Defendants, both PACA dealers (Compl. ¶ 5), accepted the Produce and agreed to pay for the Produce, pursuant to the parties' contract.  (Compl. ¶ 8.)  Gargiulo demonstrated the Defendants' abortive payment for the Produce through two dishonored checks.  (Compl. ¶ 11; Compl. Ex. 2.) Gargiulo further alleged Defendants' refusal to pay for the Produce for which they contracted (Compl. ¶ 10), in violation of PACA.  See 7 U.S.C. §  499e(c)(2).  Finally, Gargiulo timely demonstrated its "intent to preserve the benefits of the trust," by submitting ordinary billing invoices, delivered to Defendants with the Produce.  (Compl. ¶ 9.)  Gargiulo additionally alleges

that Dorian dissipated PACA trust assets, for which Gargiulo was the beneficiary (Compl. ¶ 21), in violation of Dorian's statutory duty to preserve those funds. See § 499e(c)(2). This Court finds that Defendants violated their duty under the PACA statute because they accepted the delivered Produce, failed or refused to pay for the Produce, and failed to preserve the funds in the PACA trust. Since Gargiulo timely preserved its interest in the PACA trust, it is entitled to damages of $8,169.50, for the delivered Produce. See 7 U.S.C. § 499e(c)(2).

Gargiulo additionally seeks damages of $1,037.50 in interest on the principal balance owed and $4,605.95 in attorneys' costs and fees. PACA requires that the unpaid supplier or dealer be given the "full payment of sums owing in connection with such transactions." As a result, an unpaid PACA supplier is entitled to all interest, attorney's fees, and costs for which the parties have contracted. Country Best, 361 F.3d at 631.

The invoices submitted with the accepted produce included provisions for interest of "18% per annum" on unpaid balances. (Compl. Ex. 1; McGowan Cert. Ex. 1.) Gargiulo is entitled to interest of eighteen (18) percent, per year, of the principal balances of each invoice from the dates payment became overdue until the date of entry of judgment.

The invoices contain a provision for "reasonable attorney's fees of 33 1/3%" of the unpaid balances; the invoices, however, include no provision for associated costs. (Compl. Ex. 1; McGowan Cert. Ex. 1.) The attorneys' fees, separated from costs, are $3,363.75.[6] Gargiulo's requested attorneys' fees exceed one-third of the principal balance; therefore, it is entitled only to $2,723.17 of the attorneys' fees. This Court will award no costs, as they are nowhere alleged to

---

[6] Attorneys' fees were calculated according to the Certification of Louis W. Diess, III in Support of Motion for Default Judgment (Docket Entry No, 8-5) and the Certification of David W. Fassett in Support of Motion for Default Judgment (Docket Entry No. 8-4).

be contractual obligations.

## VI. CONCLUSION

For the reasons set forth above, this Court shall grant Plaintiff's motion for default judgment and provide Plaintiff with the above-described remedies.

Date: July 14, 2009                  S/Joseph A. Greenaway, Jr.
                                               JOSEPH A. GREENAWAY, JR., U.S.D.J.